## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 58-C-1159 |
| | ) | |
| True Temper Corporation; | ) | |
| Wilson Athletic Goods Mfg. Co., Inc.; | ) | |
| A.G. Spalding & Bros., Inc.; | ) | |
| MacGregor Sport Products, Inc.; and | ) | |
| Hillerich & Bradsby Co., | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

APR 11 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

## UNOPPOSED MOTION OF DEFENDANT TRUE TEMPER SPORTS, INC.
## TO CONSOLIDATE THIS ACTION WITH
### *UNITED STATES V. TRUE TEMPER CORP.*, CIV. NO. 58-C-1158

True Temper Sports, Inc. ("True Temper"), successor to the True Temper Corporation, a defendant in this action, respectfully moves pursuant to Rule 42(a) of the Federal Rules of Civil Procedure that this Court consolidate this action with *United States v. True Temper Corp.*, Civ. No. 58-C-1158 (N.D. Ill.). The Plaintiff United States, and the other defendants, also support this motion.[1] In support of this motion, True Temper states as follows:

1. In 1958, the United States filed two actions against True Temper in this Court alleging violations of the Sherman Act, 15 U.S.C. §§ 1 & 2. The first action, Civil Action 58-C-1158, was brought only against True Temper, then and now a manufacturer of golf club shafts. The second action, the instant action, was brought against True Temper and four manufacturers of golf clubs.

---

[1] There have been numerous changes in the structure and ownership of A.G. Spalding & Bros. since the entry of the 1961 Final Judgment, including a name change to the Top Flite Golf Co. and a bankruptcy filing in 2003. The right to use the Spalding brand name on golf clubs and certain other sports equipment is owned by Russell Corporation. Currently there are no Spalding golf clubs sold in the United States. To the extent the 1961 Final Judgment could be deemed to apply to Russell Corporation's use of the Spalding brand name on golf clubs, this motion is supported by Russell Corporation.

2.     Civil Action 58-C-1158 was settled in 1959 when True Temper and the United States agreed to the entry of a Final Judgment ("the 1959 Final Judgment"), attached hereto as Exhibit A.  The 1959 Final Judgment required True Temper to terminate its agreements with certain foreign manufacturers of steel golf club shafts and enjoined True Temper from entering into agreements relating to the manufacture, sale, distribution, exporting and/or importing of steel golf club shafts.  The 1959 Final Judgment does not specify a date of expiration.

3.     The instant action was settled in 1961 when the United States, True Temper, and the other defendants agreed to the entry of a Final Judgment ("the 1961 Final Judgment"), attached hereto as Exhibit B.  The 1961 Final Judgment prohibits True Temper and the golf club manufacturers from entering into vertical price and non-price agreements concerning the distribution and sale of golf club shafts and golf clubs.  The 1961 Final Judgment does not specify a date of expiration.

4.     This Court retained jurisdiction to enforce both decrees and to allow any of the parties to seek further orders as necessary and appropriate (see Exhibit A, para. X, & Exhibit B, para. XII).

5.     Significant changes in fact and law have led the defendants to conclude that the final judgments should be terminated, and the Plaintiff has tentatively consented to termination of the final judgments.

6.     This Court's review of whether the termination of each of the two decrees is in the public interest will turn in large part on the same set of factual and legal issues, including:

    a.  True Temper's significant decline in market share since 1958;

    b.  the growth of competing manufacturers of golf club shafts;

    c.  the significant decline in market share of golf clubs sold by the four other defendants in Civil Action 58-C-1159; and

    d.  significant changes in the antitrust jurisprudence of both price and non-price vertical restraints.

7.    Consolidating these cases will serve judicial economy by limiting the number of pleadings that must be filed and reviewed by the court, including elimination of largely duplicative filings.

THEREFORE, True Temper respectfully requests that this action be consolidated with Civil Action No. 58-C-1158, or, in the alternative, that these action be assigned to the same judge.

Dated:  April 10, 2008

Respectfully submitted,

Robert E. Hauberg, Jr.
John G. Calender
Phillip C. Zane, Illinois Bar No. 6208254
Baker Donelson, Bearman, Caldwell & Berkowitz, P.C.
555 Eleventh Street, N.W., Sixth Floor
Washington, D.C. 20004
202-508-3400

Attorneys for True Temper Sports, Inc.

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| ) | No. 58 c 1158 |
| vs. ) | |
| ) | |
| TRUE TEMPER CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### FINAL JUDGMENT

Plaintiff, United States of America, having filed its complaint herein on June 30, 1958, and the defendant herein, True Temper Corporation, having appeared by its attorneys, and said plaintiff and defendant having severally consented to the entry of this Final Judgment herein, without trial or adjudication of any issue of fact or law herein and without admission by any party in respect to any such issue;

NOW, THEREFORE, before any testimony has been taken and without trial or adjudication of any issue of fact or law herein, and upon consent as aforesaid of the parties hereto, it is hereby,

ORDERED, ADJUDGED AND DECREED as follows:

### I.

This Court has jurisdiction of the subject matter herein and of the parties hereto. The complaint states

claims for relief under Sections 1 and 2 of the Act of
Congress of July 2, 1890 (15 U.S.C. §§ 1 and 2), entitled
"An act to protect trade and commerce against unlawful
restraints and monopolies", commonly known as the Sherman
Act, as amended.

## II.

As used in this Final Judgment:

(A)  "Defendant" shall mean True Temper Corporation,
a corporation which is organized and existing under the laws
of the State of Ohio (and which prior to 1949 operated
under the name of The American Fork and Hoe Company), having
its principal place of business at 1623 Euclid Avenue,
Cleveland, Ohio;

(B)  "Foreign Company" or "Foreign Companies" shall
mean any, some, or all of the following:

1.  Accles and Pollock Limited, a company,
organized under the laws of the United Kingdom,
having an office in Oldbury, England;

2.  Australian Steel Golf Shafts Proprietary
Limited, a corporation organized under and pursuant
to the Companies Act (South Australia) 1936, having
an office in Adelaide, Australia;

3.  British Steel Golf Shafts Limited, a company
organized under the laws of the United Kingdom,
having an office in Oldbury, England;

4. British Tube Mills (Australia) Proprietary Limited, a corporation organized under and pursuant to the Companies Act (South Australia) 1936, having an office in Adelaide, Australia;

5. Stewarts & Lloyds (Australia) Proprietary Limited, a company incorporated in Australia with offices in Adelaide, Australia.

6. Tube Investments Limited, a company organized under the laws of the United Kingdom;

(C) "Person" shall mean any individual, partnership, firm, association, corporation or other legal entity.

(D) "Principal Stockholder" of a corporation shall mean any person who owns of record or beneficially 5 per cent or more of the outstanding voting stock of such corporation.

(E) "Steel Shafts" shall mean tubular steel shafts produced for use as a component part of golf clubs.

(F) "Subsidiary" of Defendant shall mean any corporation 50% or more of the voting stock of which is owned or, directly or indirectly, controlled by Defendant.

III.

The provisions of this Final Judgment applicable to Defendant shall apply to its officers, directors, agents, employees, subsidiaries, successors and assigns, and to those persons in active concert or participation with it who receive notice of this Final Judgment by personal service or otherwise.

3

For the purposes of this Final Judgment Defendant and its directors, agents, employees, subsidiaries, or any of them, when acting in such capacity, shall be deemed to be one person.

IV.

Defendant is hereby:

(A) Ordered and directed to terminate and cancel, to the extent not heretofore cancelled, expired, terminated or suspended, the following agreements:

(1) Agreement, dated January 13, 1930, between Accles and Pollock Limited and The American Fork and Hoe Company;

(2) Agreement, dated July 16, 1930, between Accles and Pollock Limited and The American Fork and Hoe Company;

(3) Agreement, dated June 1, 1931, among The American Fork and Hoe Company, Accles and Pollock Limited, and British Steel Golf Shafts Limited;

(4) License Agreement, dated December 12, 1931, between The American Fork and Hoe Company and Accles anc Pollock Limited;

(5) License Agreement, dated October 13, 1932, between The American Fork and Hoe Company and Accles and Pollock Limited;

4

(6)  Agreement, dated November 5, 1948, among
The American Fork and Hoe Company, Accles and
Pollock Limited, and British Steel Golf Shafts Limited;

(7)  Agreement, dated February 15, 1949,
between Accles and Pollock Limited and The
American Fork and Hoe Company;

(8)  Agreement, dated September 4, 1956,
among Defendant, Accles and Pollock Limited,
and British Steel Golf Shafts Limited;

(B)  Ordered and directed to terminate and cancel,
within ninety (90) days from the date of entry of this
Final  Judgment, each of the following agreements which
shall not theretofore have been terminated or cancelled:

(1)  License Agreement, dated September 14,
1939, between The American Fork and Hoe Company
and British Tube Mills (Australia) Proprietary
Limited;

(2)  Agreement, dated December 16, 1938,
between The American Fork and Hoe Company and
Accles and Pollock Limited;

(3)  Agreement, dated September 14, 1939,
among The American Fork and Hoe Company, Accles
and Pollock  Limited, British Steel Golf Shafts
Limited, British Tube Mills (Australia) Proprietary
Limited, and Australian Steel Golf Shafts

5

Proprietary Limited;

(4)  Agreement, dated September 14, 1939,

between The American Fork and Hoe Company and British

Tube Mills (Australia) Proprietary Limited;

provided, however, that Defendant may receive payment of

any amounts which shall have accrued for payment under

any of said agreements prior to the date of the termination

required by this subsection (B);

(C)  Enjoined ... restrained from adhering to, per-

forming, reviving or enforcing any agreement cancelled

pursuant to subsection (A) or (B) of this Section IV, and

from entering into or adhering to any other agreement,

contract or understanding which contains any provision

contrary to or inconsistent with any provision of this

Final  Judgment.

### V.

Defendant is ordered and directed to furnish within

ninety (90) days after the entry of this Final  Judgment a

true copy thereof to each Foreign Company which is a party

to any agreement the termination or cancellation of which

is ordered by Section IV of this Final Judgment.

### VI.

Defendant is enjoined and restrained from entering into,

adhering to, maintaining or enforcing any contract, agreement

or understanding with any other person, the purpose or effect

6

of which is, or may be, to:

(A)  Allocate or divide territories, markets or cus-
tomers for the manufacture, sale or distribution of Steel
Shafts;

(B)  Restrict or limit imports into or exports from
the United States of Steel Shafts;

(C)  Fix prices, terms or conditions for the sale of
Steel Shafts to or by any third person.

### VII.

Defendant is enjoined and restrained from, directly or
indirectly, limiting, restricting or preventing or attempting
to limit, restrict or prevent any other person from importing
into the United States Steel Shafts manufactured outside the
United States or from exporting outside the United States
Steel Shafts manufactured in the United States provided,
however, that nothing in this Final Judgment shall be deemed
to prohibit Defendant from exercising such lawful rights
as it may have under the laws of the United States relating
to patents and trade-marks to prevent the unauthorized use,
by others, of any patent or trade-mark issued to Defendant.

### VIII.

(A)  Upon expiration of seven months after entry of
this Final Judgment, Defendant is enjoined and restrained
from exercising, directly or indirectly, voting power of any
stock or financial interest which Defendant may then own in

7

any Foreign Company.

(B)  Defendant is ordered and directed within thirty
(30) days after entry of this Final Judgment to initiate
such steps as may be necessary to divest itself, within seven
(7) months after entry of this Final Judgment, of all stock or
financial interest which it may have in any Foreign Company,
and shall thereafter divest itself of such stock or financial
interest.

(C)  Defendant is enjoined and restrained from:

(1)  Disposing of any of the stock required to
be divested under the provisions of this Section VIII
to any subsidiary of Defendant, or any officer or
principal stockholder of Defendant or of its subsidiaries,
or any individual directly or indirectly affiliated
with Defendant or related to any of its officers or
directors, or any company in which any officer or
director of Defendant is a principal stockholder.

(2)  Reacquiring any stock or financial interest
required to be divested under the provisions of this
Section VIII;

(3)  Hereafter acquiring, by purchase, merger or
otherwise, any stock, financial or managerial interest
in and to any Foreign Company;

(4)  Permitting any of its officers, directors,
or employees to serve, at the same time, as an

8

officer, director, or employee of any Foreign

Company, or any other person engaged in the manu-

facture, sale or distribution of Steel Shafts.

(D)  Defendant is ordered and directed within ninety

(90) days after the date of this Final Judgment to file

with this Court and serve upon the plaintiff conformed

copies of the resignation of each of its officers, directors,

or employees from any position held by them at the time of

entry of this Final Judgment with any Foreign Company.

(E)  If within a period of seven months after the

entry of this Final Judgment Defendant has sold or otherwise

divested itself of such stock or financial interest in any

Foreign Company, Defendant is ordered and directed to file

with this Court and serve upon plaintiff a report showing

the fact and manner of Defendant's compliance with this

requirement.

(F)  If, at the end of such period of seven months after

entry of this Final Judgment, Defendant shall not have sold

or divested itself of such stock or financial interest in

each Foreign Company then, and in that event, Defendant

is ordered and directed to file with this Court and serve

upon plaintiff a report of such fact.  This Court shall

then, and in that event, enter a further order herein pro-

viding for (1) transfer by Defendant of such stock or

financial interest in such Foreign Companies to a trustee

9

to be appointed by this Court and (2) authority in such
trustee to sell or otherwise dispose of such stock or
financial interest of Defendant in such Foreign
Companies upon such terms and conditions as to this
Court may appear appropriate after notice and opportunity
by the parties to be heard.  Such trustee shall have power
to hold such stock or financial interest of Defendant,
to receive and pay to Defendant any dividends accruing
thereon and shall be paid such compensation as may be
directed by this Court and such trustee shall submit to
this Court and to plaintiff such reports as may be directed
by this Court regarding the performance of his trust.

## IX.

For the purpose of securing compliance with this
Final Judgment, and for no other purpose, and subject to
any legally recognized privilege, duly authorized repre-
sentatives of the Department of Justice shall upon the
written request of the Attorney General or the Assistant
Attorney General in charge of the Antitrust Division, and
on reasonable notice to Defendant made to its principal
office, be permitted:

(A)  Access, during the office hours of Defendant,
to the books, ledgers, accounts, correspondence, memoranda
and other records or documents in the possession or under
the control of Defendant relating to any matters contained

10

in this Final Judgment; and

(B) Subject to the reasonable convenience of Defendant and without restraint or interference from it, to interview officers or employees of Defendant, who may have counsel present, regarding any such matters.

Upon such written request Defendant shall submit such reports in writing to the Department of Justice with respect to matters contained in this Final Judgment as may from time to time be necessary for the enforcement of said Judgment. No information obtained by means provided in this Section IX shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch of plaintiff, except in the course of legal proceedings to which the United States is a party for the purpose of securing compliance with this Final Judgment or as otherwise required by law.

## X.

Jurisdiction is retained for the purpose of enabling either party to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of the

11

provisions thereof, for the enforcement of compliance

therewith and for the punishment of violations thereof.

                    Enter:

                    /s/ William J. Campbell
                    United States District Judge

Dated: August 20, 1959

We hereby consent to the making and entry of the foregoing

Final Judgment:

FOR THE PLAINTIFF:


/s/  Robert A. Bicks                  /s/ Earl A. Jinkinson
     Robert A. Bicks                      Earl A. Jinkinson
Acting Assistant Attorney
        General


/s/ W. D. Kilgore, Jr.               /s/Harry N. Burgess
    W. D. Kilgore, Jr.                   Harry N. Burgess


/s/ George H. Schueller              /s/Willis L. Hotchkiss
    George H. Schueller                  Willis L. Hotchkiss


                                     /s/ Thomas J. Rooney
                                         Thomas J. Rooney


                                     /s/ Samuel J. Betar, Jr.
                                         Samuel J. Betar, Jr.


                    Attorneys, Department of Justice


                        12

FOR THE DEFENDANT:


/s/ John C. Butler
     John C. Butler


/s/ Robert H. Bork
     Robert H. Bork


/s/John H. Watson, Jr.
     John H. Watson, Jr.

**EXHIBIT B**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | NO. 58 C 1159 |
| TRUE TEMPER CORPORATION; | ) | |
| WILSON ATHLETIC GOODS MFG. | ) | |
| CO., INC.; A. G. SPALDING | ) | |
| & BROS., INC.; MacGREGOR | ) | |
| SPORT PRODUCTS, INC.; and | ) | |
| HILLERICH & BRADSBY CO., | ) | |
| | ) | |
| Defendants. | ) | |

At Chicago, Illinois, in said Division
and District on August 1, 1961.

FINAL JUDGMENT

Plaintiff, United States of America, having filed its complaint

herein on June 30, 1958, each of the defendants having appeared, and

the plaintiff and each of the defendants, by their respective

attorneys, having consented to the entry of this Final Judgment

without trial or adjudication of any issue of fact or law herein,

and without said judgment constituting evidence or an admission

by any party with respect to any such issue;

NOW, THEREFORE, before the taking of any testimony and without

trial or adjudication of any issue of fact or law herein, and upon

consent of the plaintiff and each defendant, it is hereby

ORDERED, ADJUDGED, and DECREED as follows:

I

This Court has jurisdiction of the subject matter of this action and of the parties hereto. The complaint states claims upon which relief against the defendants may be granted under Sections 1 and 2 of the Act of Congress of July 2, 1890, entitled "An Act to protect trade and commerce against unlawful restraints and monopolies," commonly known as the Sherman Act, as amended.

II

As used in this Final Judgment:

(A) "Defendant club manufacturers" shall mean Wilson Athletic Goods Mfg. Co., Inc., a Delaware corporation, A. G. Spalding & Bros., Inc., a Delaware corporation, MacGregor Sport Products, Inc., an Ohio corporation, and Hillerich & Bradsby Co., a Kentucky corporation;

(B) "True Temper" shall mean the defendant True Temper Corporation, an Ohio corporation;

(C) "Golf club" shall mean and include any kind, variety, style, or type of club used in playing the game of golf, regardless of the material out of which such club or any component thereof is made;

(D) "Club manufacturer" shall mean any person engaged in the production or assembly of golf clubs;

(E)(1) "Shaft" shall mean the shaft component of golf clubs, whether made of steel or other material;

2

(2) "Standard shaft" shall mean any shaft (other than special shafts) manufactured and sold by defendant True Temper in its regular course of business;

(3) "Special shaft" shall mean any shaft manufactured by defendant True Temper for and sold to a single club manufacturer according to a specially developed design (i) different from the design of any other shafts produced by True Temper and (ii) set forth or confirmed in writing to defendant True Temper by the particular club manufacturer for whom such special shafts are being or to be manufactured;

(F)  "Jobber" shall mean any person, other than a club manufacturer, who purchases golf clubs for resale to other jobbers or to dealers;

(G)  "Dealer" shall mean any person, other than a club manufacturer, who purchases golf clubs from any club manufacturer or jobber for resale to ultimate consumers;

(H)  "Person" shall mean any individual, partnership, firm, association, corporation, or other legal entity;

(I)  "Subsidiary" shall mean any person more than fifty per cent of whose stock is, directly or indirectly, owned or controlled by a defendant.

3

### III

The provisions of this Final Judgment applicable to any defendant shall apply to each of its officers, directors, agents, employees, subsidiaries, successors and assigns, and to all other persons in active concert or participation with any such defendant who shall have received actual notice of this Final Judgment by personal service or otherwise. For the purposes of this Final Judgment each defendant and its officers, directors, agents, employees, subsidiaries, or any of them, when acting in such capacity, shall be deemed to be one person.

### IV

The defendants, and each of them, are jointly and severally enjoined and restrained from, directly or indirectly, entering into, adhering to, maintaining, enforcing, or attempting to enforce, any contract, agreement, understanding, plan, or program among themselves or with any other person:

(A)  To fix, establish, maintain, or enforce prices or other terms or conditions for the sale or resale of any shaft or golf club to third persons; provided that after the expiration of five years following the entry of this Final Judgment each defendant may, acting independently, and not in concert with one another or with any other person, exercise such lawful rights, if any, as each may have under the so-called Miller-Tydings Act with respect to golf clubs sold by it;

(B)  To establish or maintain any particular or uniform time or season for the introduction of new models, types, grades, or styles of shafts or golf clubs or accessories, or to hinder, restrict, limit, or prevent any person from introducing, at any time, any model, type, grade,

4

or style of shaft, golf club, or accessory;

(C)  To refrain from manufacturing, distributing, or selling any particular kind, type, grade, or style of shaft or golf club, or golf clubs embodying any particular kind, type, grade, or style of shaft;

(D)  To hinder, restrict, limit, or prevent, or attempt to hinder, restrict, limit, or prevent any third person from purchasing (i) standard shafts or (ii) his own special shafts from True Temper or any other source.

The provisions of this Section IV shall not apply to transactions solely between (a) a defendant and its subsidiary or subsidiaries, (b) a defendant and its parent corporation, and (c) a defendant and corporations affiliated therewith through common ownership and controlled by the same parent corporation.

### V

(A)  Any contract or agreement existing on the date of this Final Judgment by the terms of which (i) any defendant club manufacturer is required, or obligated, to purchase all, or any designated percentage or proportion, of its requirements for shafts from defendant True Temper or (ii) defendant True Temper is required or obligated to sell to any defendant club manufacturer all or any designated percentage of proportion of the requirements of such defendant club manufacturer for shafts, is hereby ordered cancelled as of the date of this Final Judgment.

(B)  The defendants are jointly and severally enjoined and restrained from renewing, adhering to, maintaining, or claiming any rights under any contract or agreement cancelled by the foregoing subsection (A) or entering into any like or similar contract or agreement with any other defendant.

## VI

(A)  Defendant True Temper is enjoined and restrained from directly or indirectly:

(1)  Fixing, suggesting, or influencing, or attempting to fix, suggest, or influence the price or prices (including resale prices), terms or conditions upon which any golf club or shaft may or shall be sold by any other person;

(2)  Hindering, restricting, limiting or preventing, or attempting to hinder, restrict, limit or prevent any other person from (a) manufacturing or selling any shaft or golf club for or to any third person or class of persons, or (b) purchasing any shaft or golf club from any manufacturer thereof;

(3)  Making proposals or suggestions to any club manufacturer, jobber, or dealer regarding (a) the price or prices at which any such club manufacturer, jobber, or dealer sells, has sold, or will sell any golf club, (b) the person or persons, or categories of persons, to whom any such club manufacturer, jobber, or dealer sells, has sold or will sell any golf club, or (c) the person or persons to whom defendant True Temper sells, has sold or will sell any standard shaft;

(4)  Giving, or offering to give, to any club manufacturer in the United States, in connection with any sale of standard

6

shafts, any price, discount, rebate, or advertising or
other allowance, except such as (a) are lawful under
applicable laws of the United States relating to price
discrimination, (b) shall have first been published
generally to the trade, and (c) shall be available to
all purchasers upon the published terms and conditions;
provided, however, that in any suit or proceeding which
may hereafter be instituted by the plaintiff against
defendant True Temper, in which the plaintiff shall have
established a _prima_ _facie_ case that defendant True Temper
has violated this section, defendant True Temper may
rebut such _prima_ _facie_ case by showing that the difference
in price, discount, rebate, advertising, or other allowance,
term or condition of sale was (i) lawful under the
applicable laws of the United States relating to the
meeting of competition, and (ii) was made, offered, or
given in good faith by defendant True Temper in order
to meet an equally low price, discount, rebate, advertising,
or other allowance, or term or condition of sale, offered,
or given by a competitor;

(5)   Entering into any contract, agreement, understanding,
plan, or program with any club manufacturer whereby
defendant True Temper offers, or undertakes to (a) refuse
to sell any shaft (other than special shafts) to any other

7

club manufacturer, or (b) limit or restrict its production
of shafts to special shafts of any defendant club
manufacturer;

(6)  Coercing, compelling, or otherwise requiring, or in any
manner, attempting to coerce, compel, or otherwise require,
any golf club manufacturer in the United States to enter
into any contract or agreement obligating such golf club
manufacturer to purchase all or any designated percentage
or proportion of its requirements of shafts from the
defendant True Temper or any other source.

(B)  Defendant True Temper is ordered and directed to sell standard
shafts to any club manufacturer in the United States who makes applica-
tion in writing to True Temper, upon its usual and normal trade terms
and conditions, including credit requirements, without any discrimination
whatsoever as to availability, price, terms, conditions, or credit
requirements; provided, however, that subject to subsection (A)(4) of
Section VI this subsection (B) shall not (i) prohibit True Temper from
establishing such differences in prices, discounts, rebates, advertising,
or other allowances, or terms or conditions of sale as may be lawful
under the laws of the United States, or (ii) require defendant True
Temper to continue the manufacture of any standard shaft which defendant
True Temper has previously and publicly announced to the trade its
intention to discontinue.

8

(C) If at any one time defendant True Temper manufactures or sells special shafts for or to three or more of the defendant club manufacturers, then, upon the request of any other club manufacturer in the United States and the submission by such manufacturer of a firm order in writing for a minimum of 15,000 special shafts of one grade for woods, or a minimum of 15,000 special shafts of one grade for irons, which can be manufactured by True Temper's normal and usual manufacturing methods, such order to be for delivery in lots of not less than 5,000 shafts, defendant True Temper is ordered and directed to manufacture special shafts for such club manufacturer upon True Temper's normal and usual manufacturing and trade terms and conditions and to schedule the manufacture or production of such special shafts pursuant to such order in accordance with its normal and usual scheduling procedures, without any discrimination whatsoever against any non-defendant club manufacturer, and without offering or affording to any defendant club manufacturer any preference or priority over a non-defendant club manufacturer; provided, however, that True Temper may in good faith reflect in the prices at which such special shafts are sold any differences in the cost of manufacture, sale, or delivery of such special shafts. At any time after five (5) years from the date of entry of this decree, defendant True Temper may petition the Court to be relieved of this Section VI(C) or for appropriate modification thereof, and such relief shall be granted upon a showing by defendant True Temper that the relief incorporated in this Section VI(C)

9

is (i) not then necessary or appropriate and (ii) that substantial and effective competition exists in the manufacture and sale of special shafts.

(D)  In the event of the failure, refusal  or inability of defendant True Temper to (i) sell standard shafts to any non-defendant club manufacturer in accordance with the subsection (B) above or to (ii) manufacture and sell to or for any club manufacturer special shafts in accordance with subsection (C) above, defendant True Temper is ordered and directed (i) to advise such non-defendant club manufacturer, by letter, of the specific reason or reasons for such failure, refusal  or inability and (ii) to furnish to the plaintiff a copy of each such letter.   In any suit or proceeding which, at any time, may hereafter be brought or instituted by the plaintiff arising out of, or based upon, any such failure, refusal or inability of defendant True Temper, defendant True Temper is enjoined and restrained from raising any excuse for such failure, refusal  or inability except that specifically stated in such letter to such non-defendant club manufacturer.

## VII

The defendant club manufacturers are each individually enjoined and restrained from directly or indirectly:

(A)  Coercing, compelling, or otherwise seeking to require or induce dealers or jobbers to observe or adhere to such defendant's suggested resale prices for golf clubs manufactured by defendant;

10

provided that each defendant club manufacturer may disseminate to its
jobbers or dealers suggested resale prices on golf clubs of its own
manufacture if each separate document or paper, or the first inside
page of any catalogue, so disseminated and containing or purporting
to contain suggested resale prices bears a clear statement, in bold
type, on the face thereof, or on such page, to the effect that the
prices therein contained are suggested prices only, and are not bind-
ing upon any person;

(B)  Hindering, restricting, or preventing, or attempting to
hinder, restrict, or prevent any other person from:

(1)  Purchasing any shaft or shafts from any source;

(2)  Selling any shaft or shafts, or golf club or clubs to any
third person;

(3)  Manufacturing, selling, or distributing any golf clubs;

(C)  Entering into, adhering to, maintaining, enforcing, or
attempting to enforce, any contract, agreement, understanding, plan,
or program with any other person to restrict or limit, in any manner,
the sale or resale of any particular grade or type of golf club, or
any golf club embodying any particular grade or type of shaft, to any
particular category or categories of customers or purchasers, or
through any particular channel or channels of distribution; except
that each defendant club manufacturer may individually and independently
elect to sell particular grades or types of golf clubs to particular
customers or categories of customers, provided such golf clubs bear

11

the brand name or names of the selling defendant or the purchaser;

(D)  Permitting any of its officers, directors, agents, or employees, to serve also, at the same time, in any similar capacity with any other club manufacturer or with defendant True Temper, or permitting any of its officers or directors while so serving to hold or continue to hold, individually or as a group, in excess of one per cent of the outstanding stock of any class or in excess of one per cent of the outstanding debt obligations of any class of any other club manufacturer or of defendant True Temper;

(E)  Communicating, in any manner, circulating, or disseminating to any person outside of the defendant's own organization or employ, any price lists or quotations or tentative lists or quotations for the sale of golf clubs, in advance of or prior to, the general publication, circulation, or dissemination of such price lists or quotations to the customers of the defendants and to the trade generally; or

(F)  Being a member of, contributing anything of value to, or participating in any of the activities of, any trade association or central agency of or for club manufacturers, jobbers, or dealers, with knowledge, or reasonable grounds to believe, that any of the activities thereof are, or may be, inconsistent with any of the provisions of this Final Judgment;

(G)  For a period of five (5) years following entry of this Final Judgment, using any decal, trade, or grade name, mark, or other

designation, owned or controlled by defendant True Temper, on any golf club manufactured or sold by such defendant club manufacturer, provided however that defendant True Temper may mark with its name "True Temper" or its initials "TT," shafts manufactured by it and sold to any defendant club manufacturer if all such shafts sold to defendant club manufacturers are uniformly and inconspicuously so marked.

### VIII

Should defendant True Temper, at any time hereafter, engage in the manufacture or sale of golf clubs, all of the provisions of this Final Judgment applicable to the defendant club manufacturers, except Sections VII(b) and IX shall be equally applicable to defendant True Temper as a golf club manufacturer and True Temper shall be enjoined and restrained from permitting any of its officers, directors, agents, or employees, to serve also, at the same time, in any similar capacity with any other golf club or shaft manufacturer, or permitting any of its officers or directors, while so serving, to hold or continue to hold, individually or as a group, in excess of one per cent of the outstanding stock of any class or in excess of one per cent of the outstanding debt obligations of any class of any other golf club or shaft manufacturer.  This provision shall have no effect upon the other provisions of this Final Judgment applicable to defendant True Temper as a shaft manufacturer.

13

IX

The defendant club manufacturers are ordered and directed to:

(A) Each, independently review, within ninety (90) days after the date of this Final Judgment, its then prevailing prices for golf clubs;

(B) Each, independently and individually, determine its own prices for golf clubs on the basis of its own business judgment and without any consultation with any other defendant or club manufacturer;

(C) Each publish and disseminate to its customers, and the plaintiff, on or before October 15, 1961, a price list or price lists containing the prices determined pursuant to subsection (B) above.

X

(A) The defendants are ordered and directed to cause a copy of this Final Judgment to be published at least once a month for three (3) consecutive months in the trade magazines Sporting Goods Dealer and Golfdom. The costs of compliance with this subsection (A) shall be borne equally by the defendants.

(B) For a period of five (5) years, the defendants are ordered and directed to furnish a copy of this Final Judgment to any person upon request.

14

XI

For the purpose of securing compliance with this Final Judgment and for no other purpose, and subject to any legally recognized privilege, duly authorized representatives of the Department of Justice shall upon written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division, upon reasonable notice to any defendant made to its principal office, be permitted:

(A)  Reasonable access, during the office hours of said defendant to all books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or control of said defendant relating to any of the matters contained in this Final Judgment;

(B)  Subject to the reasonable convenience of said defendant and without restraint or interference from it, to interview the officers and employees of said defendant, who may have counsel present, regarding any such matters.

For the purpose of securing compliance with this Final Judgment, each consenting defendant, upon the written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division, and upon reasonable notice made to its principal office, shall submit such written reports (under oath, if so requested) with respect to any of the matters contained in this Final Judgment as from time to time may be necessary for the enforcement of this Final Judgment.  No information obtained by the means provided in this Section XI shall be divulged by any representative of the Department of Justice to any person

15

other than a duly authorized representative of the Executive Branch of the plaintiff except in the course of legal proceedings to which the United States is a party for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

XII

Jurisdiction is retained for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment and for the enforcement of compliance therewith and the punishment of the violation of any of the provisions contained herein.


s/ Edwin A. Robson
United States District Judge

We hereby consent to the making and entry of the foregoing Final Judgment.

FOR THE PLAINTIFF

| | |
|---|---|
| s/ Lee Loevinger | s/ Earl A. Jinkinson |
| LEE LOEVINGER | EARL A. JINKINSON |
| Assistant Attorney General | |
| | s/ Willis L. Hotchkiss |
| s/ W. D. Kilgore, Jr. | WILLIS L. HOTCHKISS |
| WILLIAM D. KILGORE, JR. | |
| | s/ Thomas J. Rooney |
| s/ Harry N. Burgess | THOMAS J. ROONEY |
| HARRY N. BURGESS | |
| | s/ Samuel J. Betar, Jr. |
| s/ Baddia J. Rashid | SAMUEL J. BETAR, JR. |
| BADDIA J. RASHID | |

Attorneys, Department of Justice

Attorneys, Department of Justice

Room 404, United States Courthouse
Chicago 4, Illinois
HArrison 7-4700

16

FOR THE DEFENDANT TRUE TEMPER CORPORATION

_____s/ Robert H. Bork_____
                ROBERT H. BORK

_____s/ Gordon H. S. Scott_____
                GORDON H. S. SCOTT

Kirkland, Ellis, Hodson, Chaffetz & Masters
          130 East Randolph Drive
            Chicago 1, Illinois

_____s/ John H. Watson, Jr._____
                JOHN H. WATSON, JR.
                M. B. & H. H. Johnson
                Union Commerce Building
                Cleveland, Ohio


FOR THE DEFENDANT A. G. SPALDING & BROS., INC.

_____s/ John T. Chadwell_____
                JOHN T. CHADWELL

_____s/ Richard M. Keck_____
                RICHARD M. KECK

_____s/ Richard S. Rhodes_____
                RICHARD S. RHODES

Snyder, Chadwell, Keck, Kayser & Ruggles
          135 South LaSalle Street
            Chicago 3, Illinois


FOR THE DEFENDANT WILSON ATHLETIC GOODS MFG. CO., INC.

_____s/ Thomas Freeman_____
                THOMAS FREEMAN

_____s/ Louis R. Simpson_____
                LOUIS R. SIMPSON

          Suite 900, Prudential Plaza
            130 East Randolph Drive
              Chicago 1, Illinois


17

FOR THE DEFENDANTS MacGREGOR SPORT PRODUCTS, INC.
and HILLERICH & BRADSBY CO.

s/ Miles G. Seeley
MILES C. SEELEY

s/ Erwin C. Heininger
ERWIN C. HEININGER

Mayer, Friedlich, Spiess, Tierney, Brown & Platt
231 South LaSalle Street
Chicago, Illinois

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

United States of America,           )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        Civ. No. 58-C-1159
                                    )
True Temper Corporation;            )
Wilson Athletic Goods Mfg. Co., Inc.; )
A.G. Spalding & Bros., Inc.;        )
MacGregor Sport Products, Inc.; and )
Hillerich & Bradsby Co.,            )
                                    )
                    Defendants.     )

### PROPOSED ORDER

Upon consideration of the motion of Defendant True Temper Sports, Inc. to consolidate

this action with *United States v. True Temper Corp.*, No. 58-C-1158, and after a review of the

relevant pleadings, it is hereby

ORDERED that this action be and hereby is consolidated with *United States v. True

Temper Corp.*, No. 58-C-1158.

SO ORDERED.

Dated: _____          _____
                                        United States District Judge

Tendered by:

Phillip C. Zane, Illinois Bar No. 6208254
Baker Donelson, Bearman, Caldwell & Berkowitz, P.C.
555 Eleventh Street, N.W., Sixth Floor
Washington, D.C. 20004
202-508-3400
Attorneys for True Temper Sports, Inc.

## CERTIFICATE OF SERVICE

I, Phillip C. Zane, an attorney and a member of the Bar of this Court, hereby certify that on this 10th day of April, 2008, I caused a true and correct copy of True Temper Sports, Inc.'s UNOPPOSED MOTION OF DEFENDANT TRUE TEMPER SPORTS, INC. TO CONSOLIDATE THIS ACTION WITH UNITED STATES V. TRUE TEMPER CORP., CIV. NO. 58-C-1158, Notice of Motion and Proposed Order to be served on the following by US mail, postage prepaid:

*for the United States:*
Frank Vondrak, Esq.
Rosemary S. Thompson, Esq.
Antitrust Division, United States Department of Justice
209 South LaSalle Street, Suite 600
Chicago, Illinois, 60604.

*for Wilson Athletic Goods Mfg. Co., Inc.:*
Ray Berens, Esq.
Andre Pabarue, Esq.
Amer Sports North America
8750 W. Bryn Mawr Ave.
Chicago IL 60631

*for Russell Corp.*
*(owner of certain marks once owned by A.G. Spalding & Bros., Inc.):*
Clay Humphries, Esq.
Russell Corp.
755 Lee Street
Alexander City, AL 35010

*for MacGregor Sport Products, Inc.:*
Michael Robbins
COO, MacGregor Golf
MacGregor Sport Products, Inc.
1000 Pecan Grove Dr.
Albany, GA 31710

*for Hillerich & Bradsby Co.:*
Steven H. Lyverse, Esq.
Hillerich & Bradsby Co., Inc.
800 West Main St.
Louisville, KY 40232-5700

Phillip C. Zane